UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **ELMER JONES,** | ) | CASE NO. 5:24-CV-00266 |
| | ) | 5:20-CR-00171 |
| | ) | |
| Petitioner, | ) | |
| | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| v. | ) | |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| Respondent. | ) | **MEMORANDUM OF OPINION** |
| | ) | **AND ORDER** |
| | ) | |
| | ) | |

This matter comes before the Court upon Petitioner Elmer Jones's petition pursuant to 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence. Doc. 1, Doc. 164. For the reasons set forth below, Jones's Motion to Vacate, Set Aside, or Correct Sentence is DENIED.

**I.      FACTUAL AND PROCEDURAL BACKGROUND**

On February 4, 2020, Stark County Sherriff's Office deputies found Jones unconscious behind the wheel of his running vehicle at a red light. Doc. 102, p. 5. Jones was unable to keep his balance during field sobriety tests. Id. During these tests, deputies located a firearm. Id. Jones was arrested and taken into custody. Id. Jones admitted that the vehicle and the firearm were his. Id.

> A search of the vehicle revealed the following items on the passenger side of the vehicle: nine vacuumed-sealed bags of marijuana; a loaded Romarm/Cugir Arms, Model Micro Draco, 7.62x39mm pistol, serial number PMD-14664-19-RO, with one round in the chamber and 24 rounds in the loaded magazine; $208; an Ohio Driver's License in the name Erik Michel Holder; a Nevada Driver's License containing the same photo used in the defendant's Ohio Driver's License; and two Apple iPhones. In the trunk of the vehicle, the following items were seized: a navy

1

> rolling bag containing 16 plastic bags with suspected methamphetamine; a white plastic bag containing 5 vacuum-sealed bags with marijuana in those bags; and a Vaultz lockable box. The Vaultz lockable box could not be opened without having to be forced open. A search warrant was later granted for the box to be opened, and inside the box the following items were located: a vacuum-style bag containing a clear sandwich bag with brown powder; a digital scale; a plastic bag containing a section of blotter paper (29 squares); a plastic container labeled "Fedi," containing a plastic bag with white powder; a plastic bag containing a tan powder; a vacuum-style bag containing a glass jar labeled "Lemon Head" with brown powder; a vacuum-sealed bag containing a plastic container with tan powder; white dust mask; latex gloves; and an empty vacuum-style bag.

Doc. 102, p. 5. Testing results confirmed 3,846.3 grams of marijuana were located on the passenger side of the defendant's vehicle; 2,241.8 grams of marijuana and 7,093.3 grams of methamphetamine were in the trunk; and 122.71 grams of a mixture and substance containing heroin and fentanyl and 0.25 grams of LSD were located in the Vaultz lock box. Id. On March 4, 2020, Jones was indicted on the following charges: Possession with Intent to Distribute a Controlled Substance, in violation of Title 21,United States Code, Sections 841(a)(1) and (b)(1)(A)(viii), Possession with Intent to Distribute a Controlled Substance, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(B)(vi), Possession with Intent to Distribute a Controlled Substance, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(C), Possession with Intent to Distribute a Controlled Substance, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(D), and Possession of a Firearm in Furtherance of a Drug Trafficking Crime, in violation of Title 18, United States Code, Section 924(c)(1)(A)(i). Doc. 12. On October 22, 2020, a superseding indictment was filed to correct the serial number of the firearm in question but was otherwise identical to the original indictment. Doc. 52, Doc. 131, p. 2.

The matter proceeded to trial and on November 23, 2020[1], a jury convicted Jones of all five counts. Doc. 89. On March 4, 2021, the Court sentenced Jones to a 270-month aggregate sentence. R. 109. Upon appeal, the Sixth Circuit Court of Appeals affirmed the Court's judgment. Doc. 158.

Jones now makes this Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255.

**II. LAW AND ANALYSIS**

Under 28 U.S.C. § 2255, "A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). To prevail on a §2255 motion, the petitioner must allege that: 1) his conviction resulted from an error of constitutional magnitude; 2) his sentence was imposed outside the statutory limits; or 3) an error of fact or law occurred that was so fundamental as to render the entire proceedings invalid. *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006); *Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003); *Moss v. United States*, 323 F.3d 445, 454 (6th Cir. 2003). The petitioner must sustain the allegations by a preponderance of the evidence. *Pough*, 442 F.3d at 964.

---

[1] Jones was indicted just before the COVID-19 pandemic caused this Court to issue a general order suspending jury trials from March 16, 2020 to September 21, 2020. For that and other reasons that were upheld on appeal, Jones's right to a speedy trial was not violated. *United States v. Jones*, No. 21-3252, 14 (6th Cir. Feb. 9, 2023).

3

Jones raises two grounds for relief, asserting that his Sixth Amendment rights were violated due to ineffective assistance of counsel. Doc. 164. The standard for ineffective assistance of counsel is a two-part test set forth by the U.S. Supreme Court in *Strickland v. Washington,* 466 U.S. 668 (1984). First, Jones must show that his counsel's performance was deficient. *Id.* at 687. Counsel must not merely have erred but erred so "serious[ly] that counsel was not functioning as the 'counsel' guaranteed…by the Sixth Amendment." *Id.* Second, Jones must show a reasonable probability that but for the error, the results of his proceedings would have been different. *Id.* When a defendant makes an insufficient showing on one component of the two-part inquiry, reviewing courts are not required to "address both components of the inquiry." *Id.* at 697.

In his first claim, Jones contends that his trial counsel, Attorney Billak, was ineffective for "mis-informing [him] that he could proceed to trial and receive a lesser sentence if acquitted of the Count One methamphetamine charge." Doc. 164-1, p. 6. It is axiomatic that if Jones was acquitted on Count 1, he could have received a lesser sentence. Thus, this was not an inaccurate statement of law.

Jones further contends that Attorney Billak informed him that "if he proceeded to trial, he could deny possession of the methamphetamine found in the trunk of his car." Id. Again, this is an accurate statement of law. Nothing prohibited Jones from asserting the defense that the Government failed to establish that he possessed the methamphetamine. In support of his argument that the statement was incorrect, Jones asserts that his proffer restricted him from denying possession of methamphetamine. Doc. 167. "In this case, the proffer agreement states (and Jones does not dispute) that Jones agreed that the proffer could be used for impeachment if Jones made arguments that were inconsistent with the proffer." *United States v. Jones*, No. 21-

4

3252, 16 (6th Cir. Feb. 9, 2023). The proffer put restrictions on, but did not eliminate, the defense. The proffer did not prohibit Jones from asserting that the Government failed to establish that he possessed the methamphetamines, but rather that if he asserted inconsistent arguments, the proffer could be used for impeachment. As can be seen at trial, Jones was able to put on defense that allowed for argument that the Government did not prove the charge.

Finally, Jones contends that Attorney Billak did not inform him that "[e]ven if acquitted on the Count 1 methamphetamine charge, the sentence would have remained the same because Jones admitted possession of the methamphetamine in the proffer" and therefore the Court could consider the conduct at sentencing. Doc. 164-1, p. 6. This is an incorrect legal statement. As noted above, if acquitted of Count 1, Jones's sentence could have been different. To the extent that he believes this Court could have considered the proffer at sentencing, that is also incorrect.[2] In fact, the Court discussed the use of the proffer at the sentencing and determined that it would not consider it. Doc. 144, p. 15. Therefore, Attorney Billak's performance was not deficient.

Even if, for sake of argument, Attorney Billak's performance was deficient, Jones cannot establish that the results of the proceedings would have been different. He contends that but for Attorney Billak's deficient performance, he would not have proceeded to trial. In fact, the record reveals that Jones was determined to go to trial, going so far as to refusing to plea to the superseding indictment based on speedy trial grounds. Doc. 131, p. 8. His statements mimic those made by John Pappas, an individual not admitted to the practice of law who purported to

---

[2] U.S.S.G.§ 1B1.8 "forbids the government to influence the sentencing range by disclosing revelations by a defendant in the course of cooperation as required by a plea agreement." *United States v. Miller*, 910 F.2d 1321, 1325 (6th Cir.1990).

give Jones advice, interfering with Attorney Billak's representation in this matter, and against the warnings of this Court.[3] Accordingly, Jones' first claim is without merit.

In his second claim for relief, Jones asserts that his appellate counsel, "Attorney Paul Croushore was ineffective for failing to argue on appeal that Elmer Jones was not present for the entirety of his sentencing hearing in violation of Fed.R.Crim. P. 43." Doc. 164-1, p. 7. Jones contends that his video connection was lost during the sentencing hearing, and he was unable to respond to the Court's statement "there is no evidence Jones is a crack baby and is not sure why he uses that term." Jones contends that if Attorney Croushore had asserted this on appeal, the matter would have been remanded for resentencing. Doc. 164-1. Thus, the only prejudice Jones asserts is that he did not get to respond to the Court's statement regarding him being a crack baby.

Jones was present at his sentencing hearing and represented by sentencing counsel, Attorney Erik Jones. Doc. 144. The Court permitted Jones to speak on his own behalf, wherein he discussed that he "has straddled defenses his entire life, being a symbol for hope in his family while attempting to prove his worth, attempting to prove his worth to a society that has labeled him a crack baby from birth." Doc. 144, p. 9- 12. At the conclusion of the arguments, the Court laid out the sentencing factors, where it noted that Jones, "as he indicated earlier, reported a difficult childhood due to drug use in his childhood home and the neighborhood. His father used drugs. His mother consumed alcohol. He described himself as a crack baby, while there is no

---

[3] This matter was fully set forth by Circuit on direct appeal, and the Court will not belabor the point. In sum, the Court plainly warned Jones about relying on Pappas' advice; warned him that it understood he was playing a game to set up Attorney Billick to take the blame if he was found guilty and ultimately sentenced for his crimes."[S]o it's clear, the defendant, at least in my opinion based on what I've seen here, is also – I'm not sure why it is that he doesn't want to cooperate but simply wants to try to create an issue for appeal. That's all he is attempting to do here. And it will not work. Clearly." Doc. 131, p. 17.

evidence of that based upon what we will discuss further, and I'm not sure why he uses that term.". Doc. 144, p. 18. The Court later noted that, regarding Jones referring to himself as a "crack baby" that "there is no evidence that [he] suffers from any type of disability through the use of crack or his mother's use of crack or nothing of that nature. There's no evidence of that." Doc. 144, p. 22. Typically, the term "crack-baby" is used to describe a child whose mother used drugs while pregnant, therefore causing the child permanent disabilities. The Court pointed out that there was no evidence that Jones fit this traditional understanding. The Court in no way ignored or negated that fact that Jones's father did drugs. Further, the Court was not looking for an answer from Jones, nor was Jones entitled to respond. The Court was then informed that Jones was disconnected from the video conference.

In his reply, Jones contends that he "would have informed the Court that he believed this stigmatization and self-defeating mindset led him into a criminal lifestyle for which he now realized was wrong." Doc. 167, p. 4. This is not anything different that Jones already argued and was heard by the Court. There is no argument or indication that this would have changed his sentence. Assuming Attorney Croushore erred by not raising this issue on appeal[4], Jones fails to establish prejudice.

Because Jones's claims that his Sixth Amendment rights were violated are without merit as explained above, it cannot be said that his conviction resulted from an error of constitutional

---

[4] Arguably, this issue was raised on direct appeal. Notably, Attorney Croushore asserted that there was evidence before the Court that showed that Jones struggled "with neglect, addiction, and mental health issues all his life." Appellant brief, Doc. 39, p. 42. Attorney Croushore also noted that "in the context of his sentencing memo, Jones' reference to crack babies was obviously a reference to growing up with two addicted parents rather than a claim that he himself had been physically impaired by crack. The awkwardness of Jones' colloquy does not undermine its genuineness. Doc. 39, p. 47. In sum, Attorney Croushore asserted that the Court ignored Jones's childhood neglect and his struggles with mental health. Doc. 39, p. 48. The Sixth Circuit considered and rejected these arguments. *Jones*, No. 21-3252 at 32. Accordingly, Jones cannot establish that Attorney Croushore's performance was deficient.

7

magnitude pursuant to 28 U.S.C. §2255. Finally, Jones requests an evidentiary hearing. Jones is entitled to an evidentiary hearing under §2255 only if the Court determines such a hearing is necessary. The Sixth Circuit has routinely held that "a hearing is unnecessary where, as here, the motion, files and records conclusively show that the prisoner is not entitled to relief." *Bryan v. United States*, 721 F.2d 572, 577. (6th Cir. 1983). Upon review, Jones has not met his burden to establish that a hearing is necessary. *See Id.*

## IV. CONCLUSION

For the reasons stated above, Jones's motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence is DENIED.

Date:  December 12, 2024             /s/ John R. Adams
                                                                           **JUDGE JOHN R. ADAMS**
                                                                           **UNITED STATES DISTRICT COURT**